RECEIVED
SEP -2 2015
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In the matter of
ASHER BARUCH LANDAU, ABRAHAM ARON LESSER et al

Petitioners

v.

ZVI ARYE RHEINHOLD, MENDEL GROSS   et al

Respondents

BARUCH EISENBERG
Answering respondent

Case # CV 15 - 4811 CBA - VMS
Application In Opposition of
PETITION TO CONFIRM
ARBITRATION AWARD

---

Individual Respondent BARUCH EISENBERG appearing in this action pro se hereby submits this application in opposition of Petitioner's Petition to confirm Arbitration Award in the matter of Organizational Petitioners / Respondent "Bobov" v "Bobov-45" .

## Section I:  Historical Background

1. Many years prior to the holocaust in Poland there existed a town with the name "Bobov".  A Hasidic community existed therein known by the name of "Bobov" – a mere association with the town name.  Its leader was the revered Rabbi Solomon Halberstam of blesses memory (OB"M).  Upon his passing leadership of this Hasidic community was assumed by his son the revered Rabbi Benzion Halberstam OB"M.  The late Rabbi Benzion Halberstam OB"M served as the leader of the Haisic community, which was named after the town of origin, "BOBOV" until the holocaust, at which time he was murdered.  Athe same time the entire town of "BOBOV" was destroyed and most of the community and most of its members anihilated.

2. After the conclusion of the holocaust and the defeat of the aggressor nations, and calm was restored in Europe, the revered Rabbi Solomon Halberstam OB"M (the second) arrived at the shores of the United States.

3. Upon his arrival in the USA in 1946, he reestablished the "Bobov" community in the Upper West Side of Manhattan in hopes of rebuilding this Hasidic community.

4. Within time several branches in New York were consolidated and relocated in the Crown Heights community of Brooklyn. This later was relocated to the Boro Park community. This remained the primary place of abode for this Hasidic community named "BOBOV".

5. Over the years since its inception to date many other sattellite groups formed worldwide under the name "BOBOV" under the primary leadership of the revered Rabbi Solomon Halberstam OB"M.

6. Over the years, since its inception in 1946, many houses of worship and religious day schools were added. These institutions were named:

    a. Sharei Zion   (House of Worship)
    b. Yeshivas Bobov Bnei Zion   (Elementary School)
    c. Kerem Shlomo   (JHS)
    d. Mesivta Eitz Chaim   (HS)
    e. Bnos Zion   (School fo Girls)

7. It should be noted that although the names used in par 6 were already widely in use in New York, the USA and worldwide, there were no objections from any previous users of these names. It is common practice in the Jewish communal ordinance to use any name. It is not considered an interference or trademark infringement.

8. Upon the passing of the revered Rabbi Solomon Halberstam OB"M in the year 2000 leadership of the community was assumed by his son the Revered Rabbi Naftali Halberstam OB"M. This leadership was undisputed.

9. Upon the passing of the revered Rabbi Naftali Halberstam OB"M in the year 2005 a dispute arose among the community participants as to who shall assume leadership of the "BOBOV" community. The split was approx 50-50. One part wanted the son-in-law of Rabbi Naftali Halberstam OB"M and the other wanted the brother of the previous Rabbi.

10. This is not the place to discuss as to who is legally entitled to the assumption of leadership since this matter was submitted to arbitration. This application is not designed to review the **judgement** rulings of the arbitration panel.

11. It is however noteworthy to point out that Petitioner found it necessary to list as many names as possible as Petitioners although a very large number of those listed were either not considered of decision age (under 18) or were not part of the community at all at the time when the dispute arose.

12. Since a dispute was present the matter was handed over to a Bais Din (Jewish Court) which is tantamount to an Arbitration Panel in common law.

## Section II: The Arbitration

### Part I: The Arbitration Panel - Makeup

The arbitration panel was composed of five rabbis according to Appendix A of the Petition; chosen in different ways
1. Rabbi Yitzchok Dov Berger – by Respondent
2. Rabbi Yekusiel Zalman Gross – by Petitioner
3. Rabbi Yechiel Babad – for both parties
4. Rabbi Yitzchok Chaim Seltenreich – for both parties
5. Rabbi Avrum Burech Rosenberg – for both parties

While the first two chosen by a party will be partial to the party who chose them the latter three MUST be absolutely impartial since they are considered the decision makers. Any favorable contact with either party or their representatives would disqualify their impartiality and subsequently their impartiality.

### Part II: The Arbitration Panel - Integrity

1. The second person listed as Petitioner in Petitioners petition is an individual named "Abraham A Lesser". This individual is also the fourth signatory to the Arbitration Agreement. (Appendix A Petitioners Petition second agreement). Mr. Lesser is a very important person in the organization of Petitioner.
2. Mr. Lesser is the owner of a hotel called Raleigh Hotel located in South Fallsburgh, NY. Whether ownership is by nominee or direct proprietorship is not known to me, however he acts as owner and makes all management decisions.
3. This is a Kosher hotel and requires kosher supervision. Rabbi Babad (#3 in panel above) who is an arbitrator with impartiality requirement is the certifying Rabbi and Certifying Kashrus organization of the Raleigh Hotel. Remuneration for such a service is considerable.
4. Petitioner has a sub organization called Amidei Zion. This organization conducts at least one major fund raiser in a hotel that is NOT kosher certified. In order to conduct this function a certifying Kashrus Rabbi must be applied. Rabbi Babad was the chosen one for this function.
5. This conduct was ongoing all during the time when these arbitration hearings and proceedings were active.

### Part III: The Arbitration Agreement

This would be the governing document under what principles hearings are conducted and rulings by the panel rendered. Since this Panel was constructed in accordance with Jewish Law (Bais Din), the options for a decision are limited to:

a. In strict accordance with Jewish law or
b. Mediation or
c. In accordance with Jewish law with a minor application of mediation

The arbitration agreement in this case **requires** that a or c above be applied. (See Appendix A in Petitioners petition.)

In accordance with Jewish Law there is no such thing as a Trademark or Copyright infringement per se. Hence this ruling is a blatant disregard of the Arbitration Agreement.

Common Law application of Trade Mark rules should not apply in this case since these Marks have been in use for time immemorial by countless religious organizations throughout the United States.

The fact that so many organizations use the same name and Mark also proves that this Mark does not cause any so called "consumer" confusions.

Furthermore we are talking about a religious organization where there is no commerce or consumers of goods and services.

Whether Common Law must be observed to the letter or manifest disregard of the law only will disqualify the ruling or none of the above will apply has been a toss up in the Courts. Most US Circuit Courts, however, have ruled that manifest disregard of the law will disqualify an arbitrator's ruling (see 1985 case of Siegel v. Titan Industrial Corp., 1986 case of Merrill Lynch, Pierce, Fenner & Smith v. Bobker, 1998, Halligan v. Piper Jaffray, Inc 2000 and 2003, respectively, Greenberg v. Bear, Stearns & Co. and Hoeft v. MVL Group, Inc.). Since both the parties were one organization prior to the dispute, both have been using the name Bobov etc. When the dispute arose and Respondents were **forcibly expelled** these names remained in use by both parties. If the first use rule is applied then both parties are entitled to these names. Furthermore these names are in use by very many organizations with "commercial interference" the trademark or copyright restriction cannot be applied.

It is self understood that this agreement must be signed by the main moving parties or their duly appointed representatives in writing. It is very interesting to note that the signatures of authority of the main moving parties are missing (see Appendices F & G of Petitioner's petition). Hence there seems to be no authority to conduct this arbitration.

## Summary of Arguments to Deny Confirmation of Arbitrators Award(s)

1. F.A.A. 9 U.S.C. § 1 requires that concerns to qualify under this chapter must be engaged in either "maritime" or "commerce". § 1 defines commerce as Interstate Commerce **"commerce", as herein defined, means commerce among the several States or with foreign nations, etc.** The parties to this matter are religious organizations not involved in commerce and not in Interstate Commerce. Hence should be excluded from jurisdiction under this article. Although Petitioners in Par 8 of the Petition claim this matter to be Interstate commerce, they failed to demonstrate or elaborate on this issue.
2. The Arbitration proceedings and ruling must be conducted in accordance with the underlying agreement to arbitrate. (See above Section II Part III).
   The ruling rendered granting Petitioner Copyright or Patent of all organizational names used is incorrect for the following reasons:
   a. If Jewish Law is applied, this application does not exist in Jewish Law
   b. If Common Law is applied then "First Use" by Petitioner has not been established.
   c. Furthermore if granted then the entire world (see Section I Par 7 above) will remain allowed to use these names since these names are in use for years immemorial. Only Respondent will be excluded for allowance of use of these names – in clear violation of the First Amendment of the US Constitution.
   Since the rules of Trademark or Copyright do not apply in this instance this ruling should be considered a manifest disregard of the law with grounds for vacating or denying confirmation.
   Petitioner's request in Par 8 of the Petition shall therefore be denied.
3. Petitioner's claims in Par 3, 4 and 5 relative to Organizational hierarchy are undocumented and should be struck.
4. Petitioners claim in Par 14 and 15 that the Grand Rabbis authorized appointments of representatives at the proceedings. Petitioner has failed to attach a duly signed authorization.
5. The integrity and honesty of the arbitrator's are very questionable. Please see Section II Part II above. F.A.A. 9 U.S.C. § 10a states:
   > In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
   > (1) where the award was procured by corruption, fraud, or undue means;
   > (2) where there was evident partiality or corruption in the arbitrators, or either of them.

**Wherefore** Answering Respondent respectfully asks the Court to:

Vacate the entire order issued by the Arbitrators
Or in the alternative to

Vacate the granting of the Trademark on the organizational names
Or in the alternative to

Deny confirmation of the award
Or in the alternative to

Deny confirmation of the Trademark grant in the award.

And any such other and further relief the Court may deem just and proper.

Respectfully Submitted,

*[signature]*
BARUCH EISENBERG
Answering Respondent Pro Se
1160 49th Street
Brooklyn, NY 11219
917-416-7264
ArrowLG@gmail.com

DATED 9/v/15