# COVINGTON

BEIJING   BRUSSELS   DUBAI   JOHANNESBURG   LONDON
LOS ANGELES   NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

David Z. Pinsky

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1177
dpinsky@cov.com

**BY ECF**

August 29, 2017

The Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>Landau, et al. v. Rheinold, et al.</u>, No. 15 Civ. 4811 (CBA) (VMS)

Dear Judge Amon:

We write in response to the Court's Order of August 21, 2017, which required that any reply to Baruch Eisenberg's letter of March 15, 2017, shall be filed on or before August 29, 2017.

I.   <u>Background</u>

On August 17, 2015, the petitioners in this action ("Petitioners") filed with this Court a petition to confirm an arbitration award (the "Petition"). Between August 2015 and January 2016, Petitioners served 613 of the 618 Respondents. All 613 of these Respondents' time to respond to the Petition has long since expired.

Of these 613 Respondents, only one, Respondent Baruch Eisenberg ("Respondent Eisenberg"), has filed papers opposing the Petition. Respondent Eisenberg was served on August 20, 2015 (Affidavit of Service, ECF No. 22), and his response was due September 10, 2015. His initial opposition to the Petition was filed September 2, 2015 (Reply In Opposition to Petition, ECF No. 25). This opposition was withdrawn four weeks later, with a letter dated September 30, 2015, and docketed on October 8, 2015. (Letter from Baruch Eisenberg to Chief Judge Amon, ECF No. 31.) Over seventeen months later, on March 15, 2017, Respondent Eisenberg made a second submission requesting that the Petition be denied. (Letter from Baruch Eisenberg, ECF No. 79.) Respondent Eisenberg's letter was filed more than one year after his time to respond to the Petition had expired and, as explained below, nearly three years after the time to challenge the arbitration award under the Federal Arbitration Act ("FAA") had expired.

In its Order of August 21, 2017, the Court required that any reply to Baruch Eisenberg's letter of March 15, 2017, including any response to "the important issue of the Court's subject matter jurisdiction," shall be filed by August 29, 2017.

COVINGTON

The Honorable Carol Bagley Amon
August 29, 2017
Page 2

II. <u>This Court Has Subject Matter Jurisdiction Over This Action.</u>

This Court has subject matter jurisdiction over this action because the substantive controversy between the parties in the underlying arbitration involved questions of federal law—specifically, questions of federal trademark law.

    A. *The Court Should "Look Through" the Petition to Examine the Substantive Controversy Between the Parties in Order to Determine Whether Jurisdiction Exists.*

In *Doscher v. Sea Port*, 832 F.3d 372, 389-90 (2d Cir. 2016), the Second Circuit held that the existence of federal subject matter jurisdiction over petitions to vacate or modify arbitral awards under the FAA, 9 U.S.C. § 10, should be determined by "looking through" the petition and "applying the ordinary principles of federal-question jurisdiction to the underlying dispute." With this decision, *Doscher* applied the Supreme Court's decision in *Vaden v. Discover Bank*, 556 U.S. 49, 54 (2009), which held that, in the related context of motions to compel arbitration, a federal court is to determine the existence of federal question jurisdiction by examining "the substantive controversy between the parties." The Supreme Court explained that, when undertaking this examination, the federal court should "look through" the motion to compel and exercise jurisdiction if the court would have jurisdiction over the parties' underlying dispute. *Id.*

This "look-through" approach should be applied to petitions to confirm an arbitral award under 9 U.S.C. § 9, such as the Petition before this Court. In *Doscher*, the Second Circuit supported a uniform approach to federal jurisdiction under the FAA, and stated that "applying a look-through approach to the entire [FAA] . . . prevents absurd and illogical discrepancies." 832 F.3d at 387. The Second Circuit also recognized that FAA Sections 9 and 10 "contain substantially identical language," *id.* at 380 n.10, and based on the similarity of this language, the First Circuit has explicitly "conclude[d] that the look-through approach applies to sections 9, 10, and 11 of the FAA." *Ortinez-Espinosa v. BBVA Sec.*, 852 F.3d 36, 48 (1st Cir. 2017). The Second Circuit has already applied the look-through approach to other types of arbitration-related litigation, including actions to enjoin arbitration. *See Goldman Sachs v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 214 (2d Cir. 2014) ("In a suit to compel arbitration, we evaluate jurisdiction by looking through . . . to the parties' underlying substantive controversy. We discern no reason not to apply the logic of *Vaden* equally to actions to enjoin arbitration.") (internal quotation marks omitted); *see also UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354-55 (S.D.N.Y. 2010) ("Although *Vaden* concerned a federal court's jurisdiction to *compel* arbitration pursuant to § 4 of the FAA, its reasoning applies to situations where, as here, a party seeks to *stay* or *enjoin* an arbitration.") (emphasis in original), *affirmed* 405 Fed. App'x 550 (2d Cir. 2011).

Indeed, even before *Doscher*, the Second Circuit had already applied *Vaden*'s look-through approach in the context of motions to vacate arbitral awards under 9 U.S.C. § 10, and competing motions to vacate and confirm awards under 9 U.S.C. §§ 9 and 10. *See Guisti v. Morgan Stanley Smith Barney*, 581 F. App'x 34, 36 (2d Cir. 2014) ("Federal courts may 'look through' a petition to vacate an arbitration award to assess whether, 'save for the arbitration agreement,' the court would have jurisdiction over 'the substantive controversy between the parties.'"); *Bittner v. RBC Capital Mkts.*, 331 Fed. App'x 869, 872 (2d Cir. 2009) (assuming

*arguendo* that the "look-through" approach applies to motions to vacate); *Santos v. General Electric*, No. 1:10cv6948, 2011 U.S. Dist. Lexis 131925, at *18-19 (S.D.N.Y. Sep. 28, 2011) (Magistrate Judge Opinion) (in the context of competing motions to vacate and confirm, describing *Vaden* as "concrete guidance as to how to determine the existence of federal subject-matter jurisdiction in a case involving resort to arbitration"), *adopted by* 2011 U.S. Dist. Lexis 131882 (S.D.N.Y. Nov. 14, 2011). Consistent with these prior decisions, this Court should apply the look-through approach to determine subject matter jurisdiction over the present Petition under 9 U.S.C. § 9.

      B.    *The Substantive Controversy Between the Parties Involved Questions of Federal Law.*

When the "look-through" approach is applied to this Petition, it is clear that the "substantive controversy between the parties" involved questions of federal trademark law over which this Court has subject matter jurisdiction. Among other things, federal trademark law governs disputes over whether a name may be protected as a trademark and disputes over whether protected trademarks have been infringed. *See, e.g.*, 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.").

As noted in the Petition, the underlying arbitration involved, among other things, whether the name "Bobov" and other names associated with the institutions and organizations of Bobov are protected under federal trademark law and whether Respondents infringed Petitioners' rights in such marks. Petition at ¶ 8. After lengthy proceedings, including hearing arguments from both asides on this specific issue, the arbitral panel ruled in favor of Petitioners, stating that Petitioners—and not Respondents—are "entitled to register the name [Bobov] with the government as a Trademark." Award (Petition App'x H) at ¶ 26.

The federal trademark law questions argued in the underlying arbitration are discussed in the Declaration of Boruch Wachsman, attached as Appendix 1. As Mr. Wachsman explains, Petitioners argued in the underlying arbitration that the BOBOV mark and associated marks are protected under federal trademark law and that Respondents had infringed Petitioners' rights in such marks. Declaration of Boruch Wachsman, August 29, 2017 ("Wachsman Dec."), at ¶ 2. Specifically, Petitioners sought to establish the existence of a protected mark under Section 45 of the Lanham Act, 15 U.S.C. § 1127, because for decades the name "Bobov" has been used in commerce to distinguish the goods and services of the Bobov community, such as religious services, synagogues, educational institutions, summer camps as well as books, tapes, manuscripts, Torah commentary, and similar publications. *Id.* at ¶ 12. Petitioners argued that Respondents have no right to use the BOBOV mark because they had split from the larger Bobov community and in doing so had forfeited any rights to any asset belonging to Bobov. *Id.* at ¶ 19. Petitioners argued further that Respondents' use of the mark created a "likelihood of confusion" because Respondents' mark was "confusingly similar" to BOBOV—in fact, it was exactly the same. *Id.* at ¶ 20.

Respondents likewise relied on federal trademark law in making their arguments in the underlying arbitration, as demonstrated by the legal opinion that Respondents submitted in the arbitration, which Mr. Wachsman includes as Exhibit A to his declaration ("Respondents' Legal

**COVINGTON**

The Honorable Carol Bagley Amon
August 29, 2017
Page 4

Opinion"). Respondents argued in the underlying arbitration that "Bobov" is not a trademark, but rather a generic name that cannot be exclusively appropriated by any single group. Respondents' Legal Opinion at 2. Respondents further argued that, even if the name Bobov is entitled to protection under federal trademark law, the likelihood of confusion caused by Respondents' use was insufficient to establish infringement. Respondents' Legal Opinion at 12-16 (citing *Polaroid Corp v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

Thus, as both Petitioners' and Respondents' submissions to the arbitral panel make clear, the substantive dispute between the parties in the underlying arbitration involved issues of federal trademark law as to which this Court has subject matter jurisdiction.

III.   <u>The Parties' Arbitration Agreement Permits this Court to Confirm the Arbitration Award.</u>

Respondent Eisenberg also alleges that the Petition does not comply with 9 U.S.C. § 9 and that confirmation of the award should have been sought in New York courts. Contrary to Eisenberg's argument, nothing in the arbitration agreement or award requires enforcement in state court, and the Petition complies with 9 U.S.C. § 9.

Under the FAA, a court may confirm an arbitral award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. The parties may specify in their agreement that a particular court should confirm the award and, if no court is so specified, confirmation may be sought in federal court for the district within which the award was made. *Id.*

The parties' agreement to arbitrate, attached at Appendix A to the Petition, as well as the parties' conduct in the proceeding, demonstrates their consent to judicial confirmation of the award under 9 U.S.C. § 9. *See Tube City IMS v. Anza Capital Partners*, 25 F. Supp. 3d 486, 489 (S.D.N.Y. 2014) (stating that "[p]arties may communicate their consent to judicial confirmation of arbitral awards in ways other than an express contractual provision," including by full participation in the arbitral process and by agreeing that the award shall be final, conclusive, and binding); *see also National Casualty Company v. Resolute Reinsurance Company*, No. 15-cv-9440 (DLC), 2016 WL 1178779 (S.D.N.Y. Mar. 24, 2016) (finding consent to judicial confirmation of the award based on an agreement that the arbitral award shall be "final and binding" and the parties' conduct during the arbitration). Specifically, Respondents have indicated their consent to judicial confirmation of the award by participating fully in the arbitration and by permitting party representatives "to perform a binding procedure" (i.e., that the award will be final and binding). Petition, App'x C. The award also states that "[e]ach of the parties is entitled to confirm the Rabbinical Court Ruling in secular court." Petition, App'x H, ¶ 32. Significantly for present purposes, nothing in the arbitration agreement or award requires that confirmation proceedings be brought only in New York state court.

As Respondent Eisenberg notes, before the parties executed the arbitration agreement at Appendix A to the Petition, an action was brought in New York state court. That action, however, was to resolve a dispute only over a single parcel of real property and involved just a handful of the Petitioners and Respondents in the instant action. The stipulation resolving that action and submitting it to arbitration is attached at Appendix 2 (the "Stipulation"). The Stipulation provided

**COVINGTON**

The Honorable Carol Bagley Amon
August 29, 2017
Page 5

that the arbitration award "*may* be submitted for enforcement" to state court (Stipulation at 10) (emphasis added), but did not purport to make state court the exclusive forum for confirming the award. In fact, the parties clearly contemplated a federal role in their arbitration by agreeing that the Stipulation would be enforceable under "all applicable provisions of law governing arbitration agreements," including "Title 9 of the United States Code." Stipulation at 9. Furthermore, the Stipulation provided that "[t]he specific arbitration agreement . . . that will govern this rabbinical arbitration will be drafted by the three neutral members" of the arbitral panel. Stipulation at 6. Precisely this specific arbitration agreement is the one attached at Appendix A to the Petition and, as noted above, neither this agreement to arbitrate nor the award requires confirmation in New York courts.

Accordingly, consistent with the Stipulation, the parties' arbitration agreement, their agreement to a binding procedure, their participation in the ensuing arbitration proceedings, and the language of the arbitral award, this Court may confirm the arbitral award under 9 U.S.C. § 9.

IV. <u>Respondent Eisenberg's Other Arguments are Time-Barred and Lack Merit.</u>

Respondent Eisenberg complains that the ruling was "warped" and that it followed neither Jewish nor secular law. He also alleges that certain signatures have been "conveniently omitted" from the arbitration agreements attached to the Petition, and "speculate[s]" that some signatures may be missing. Finally, Respondent Eisenberg makes much of one arbitrator's refusal to sign the arbitration award. Each of these arguments is time-barred and, even if not time-barred, these arguments still fail.

*A. These Arguments Are Time-Barred by Nearly Three Years.*

Under the FAA, a challenge to an arbitration award is time-barred unless raised within three months after the award is made. 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.") This rule also bars oppositions to motions to confirm arbitration awards made after this three-month period. Indeed, the Second Circuit "ha[s] made clear that 'a party may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.'" *Wallace v. Buttar*, 378 F.3d 182, 198-99 (2d Cir. 2004) (quoting *Florasynth v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984)). Rather, "[w]hen the three month limitations period has run without any vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." *Florasynth*, 750 F.2d at 178.

The arbitral award at issue here was made on or about August 21, 2014, and accordingly any challenge to this award should have been raised by November 21, 2014. Respondent Eisenberg's arguments are time-barred by nearly three years, and Petitioners are therefore entitled to confirmation of the arbitration award notwithstanding Respondent Eisenberg's belated objections.

**COVINGTON**

The Honorable Carol Bagley Amon
August 29, 2017
Page 6

        B.      *Even If Not Time-Barred, Respondent Eisenberg's Remaining Arguments Still Fail.*

      Respondent Eisenberg complains that the arbitral award "negates" both Jewish law and secular law—but the arbitration agreement does not require strict adherence to either Jewish law or secular law. Instead, the parties agreed to accept "without any evasion or objection whatsoever" an award that was based on Jewish law, or "a compromise similar to Jewish law" or even "an error in Mishne {written Jewish law}." Petition App'x A. Having agreed to such a provision, Respondent Eisenberg cannot now complain that the award is not in strict adherence with either Jewish law or secular law. *See Banco de Seguros Del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (stating that an arbitration agreement that permits the arbitrators to "abstain from following the strict rules of law" should be read "generously" and grants arbitrators "wide discretion" in making their decisions); *American Centennial Ins. Co. v. Global Int'l Reinsurance Co.*, No. 12cv1400 (PKC), 2012 WL 2821936, at *13 (July 9, 2012) (rejecting a "manifest disregard" challenge because the arbitration clause in the underlying contract permitted the arbitral tribunal to "make its award with the view to effecting the general purpose of the [underlying contract] in a reasonable manner rather than in mere accordance with the literal interpretation of the language [of that contract]"). To be clear, Petitioners by no means concede that Eisenberg's claim is accurate; the point here is that the arbitration agreement expressly precludes his claim.

      To the extent that Respondent Eisenberg's allegation amounts to an objection that the award was made in manifest disregard of the law, this claim fails because Respondent Eisenberg has not met the strict standard required to successfully challenge an arbitral award on this basis. A party seeking to vacate an arbitral award on the basis of "manifest disregard" of the law must show both that (1) "the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable" and (2) "the arbitrator knew about the existence of [this] clearly governing legal principle but decided to ignore it or pay no attention to it." *Schwartz v. Merrill Lynch*, 665 F.3d 444, 453 (2d Cir. 2011) (quoting *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011)); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 140 (2d Cir. 2007) (making clear that a party must satisfy both parts of this test).

      Courts are "highly deferential" to arbitral panels when examining whether a panel has manifestly disregarded the law, and vacatur of an award on this basis is "rare." *Stmicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 79 (2d Cir. 2011) (holding that an arbitral tribunal did not manifestly disregard certain case law that was only "*generally* . . . enforced" and that had "several possible (but non-exclusive) exceptions") (emphasis in original). Further, as the Second Circuit explained in *Stmicroelectronics*, vacatur is not warranted for a mere error of law or a failure to understand or apply it, but rather "only when a party clearly demonstrates that the panel intentionally defied the law." *Id.* (quotation marks omitted). Judicial inquiry under the manifest disregard standard is "extremely limited" and confirmation may be denied on this basis only if an error is "obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986).

      Respondent Eisenberg fails to identify any clearly defined legal principle that the arbitrators in this case chose to ignore, or any error that is obvious and capable of being readily and instantly perceived by an arbitrator. Instead, he alleges only generally that the ruling was

**COVINGTON**

The Honorable Carol Bagley Amon
August 29, 2017
Page 7

"warped" and inconsistent with Jewish law and secular law. Such conclusory and unsupported allegations do not satisfy the requirements of the extremely limited ground to refuse confirmation on the basis of manifest disregard of the law; accordingly, these arguments provide no basis on which to deny confirmation of the arbitral award. In any event, the ruling was consistent with Jewish law because, as explained in the Declaration of Boruch Wachsman, under the circumstances of this case, Jewish law requires adherence to the law of the land in which its followers are living—namely, federal trademark law. (Wachsman Dec. at ¶¶ 7-8.)

Respondent Eisenberg's allegation of "conveniently omitted" signatures to the arbitration agreement likewise fails. A signed arbitration agreement is not necessary for enforcement of an arbitral award arising out of proceedings in which both parties voluntarily participated. *See, e.g., Bishop v. Smith Barney*, No. 97 Civ. 4807 (RWS), 1998 WL 50210, at *5 (S.D.N.Y. Feb. 6, 1998) (enforcing an unsigned arbitration agreement against a party that "executed a demand for arbitration, hired an attorney to prepare for the arbitration, participated in the three day hearings, and accepted payment of the arbitral award"); *Gonzalez v. Toscorp Inc.*, No. 97 CIV. 8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999) (quoting *Thomson–CSF S.A. v. American Arbitration Association*, 64 F.3d 773, 776–77 (2d Cir. 1995)) ("Parties may be bound to unsigned, written arbitration agreements as long as the 'ordinary principles of contract and agency' are satisfied."); *Thomson–CSF S.A.*, 64 F.3d at 776 (listing "five theories for binding nonsignatories to arbitration agreements," including assumption and estoppel). In light of Respondents' voluntarily participation in the arbitration, Respondent Eisenberg may not now complain about an absence of signatures on the arbitration agreement.

Eisenberg's claim is meritless in any event. The agreement to arbitrate (Appendix A to the Petition) is signed by all representatives of both sides and the addendum to that agreement (Appendix B to the Petition) is missing only one signature from Petitioners' side. A missing signature from Petitioners' side is hardly a basis for Respondent Eisenberg to complain. Moreover, the missing signature is that of Rabbi Gruber, who is not a member of Bobov and has no personal interest in this matter; Rabbi Gruber was a nominal party to the arbitration, in accordance with the practice of such proceedings. *See* Petition, ¶ 3, n.1. In addition, Petitioners have signed versions of Powers of Attorney and Specifications of Claims for all individual Petitioners (Appendix D to the Petition) and individual Respondents (Appendix E to the Petition) who are party to the Petition. As explained in the Petition, by signing these documents, the Petitioners and Respondents "agreed to arbitrate the disputes described in the arbitration agreement" and "authorized [their respective representatives] to act on [their] behalf … in connection with such arbitration." *Id.*, ¶ 13. Although voluminous, Petitioners stand ready to provide copies of these signed documents to the Court upon request.

Finally, contrary to Respondent Eisenberg's argument, an arbitrator's refusal to sign an award is not a valid ground to refuse confirmation of an arbitral award. The parties' arbitration agreement specifically states that a majority of the panel may decide the case, even if some of the arbitrators may depart from the decision (Appendix A to the Petition), and courts have confirmed awards that were not ultimately signed by all arbitrators. *See, e.g., Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 103 & 109 (2d Cir. 2013) (confirming an arbitral award signed by only two of the three arbitrators deciding the case). As such, the absence

COVINGTON

The Honorable Carol Bagley Amon
August 29, 2017
Page 8

of one arbitrator's signature on the award provides no basis on which to bar confirmation of the arbitral award.

\* \* \*

This Court has subject matter jurisdiction over this action because the underlying controversy between the parties concerns matters of federal trademark law; confirmation of the award by this Court is permissible; and Respondent Eisenberg's other challenges to the arbitration award are time-barred under the FAA. Even if these other challenges were not time-barred, the arbitral award was not rendered in manifest disregard of the law, and the omission of signatures on the agreement to arbitrate and the arbitral award does not bar confirmation under 9 U.S.C. § 9.

Accordingly, Petitioners respectfully request that this Court confirm the arbitration award as against the 613 Respondents who have been served with the Petition.

Respectfully,

David Z. Pinsky

Enclosures

cc (by regular mail, w/enclosures):

    Baruch Eisenberg