UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ASHER BARUCH LANDAU, et al.,

    Petitioners,

-against-

ZVI ARYE RHEINOLD, et al.,

    Respondents.

-----------------------------------------------------------x

NOT FOR PUBLICATION
**ORDER**
15-CV-4811 (CBA)

**AMON, United States District Judge:**

On August 17, 2015, petitioners filed this petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, to confirm an August 21, 2014, arbitration award issued by a Rabbinical Court. (D.E. # 1.) As of the January 15, 2016, deadline for service set by this Court, petitioners have served a total of 613 of the 618 respondents named in the petition. (D.E. # 72.) Only one respondent has filed an opposition to the petition; Baruch Eisenberg filed a letter on March 15, 2017 requesting that the petition be denied, principally on the grounds that the Court lacks subject matter jurisdiction to confirm the arbitration award. (See D.E. # 79.)

## BACKGROUND

On or about June 29, 2005, the parties agreed to arbitrate various disputes between them before a Rabbinical Panel. (D.E. # 1-Appx. A ("Arbitration Agreement").) Included among the disputes submitted to arbitration was whether the name "Bobov" was a protected mark under § 45 of the Lanham Act, 15 U.S.C. § 1127 and if it was protected, whether respondents had infringed upon that mark. (Arbitration Agreement at 3; D.E. # 81-Appx. A ("Wachsman Decl.") ¶¶ 3–4.) Bobov is the name of an Hasidic community and the dispute between the parties arose when respondents formed a new Hasidic community and incorporated the term "Bobov" into the community's name. (See Wachsman Decl. ¶¶ 3–4.)

1

Prior to the execution of the arbitration agreement, the parties began to litigate part of their dispute in New York Supreme Court. From the filings submitted in connection with this petition, it appears that the dispute in New York Supreme Court was limited to resolving a dispute between some of the petitioners and respondents over real property. (D.E. # 81-Appx. B at 1 ("A motion has come on before me dealing with a piece of real property that is in dispute between two different groups arising out of the same Chassidic community in Brooklyn, called Bobov.").) The parties to the proceeding in state court agreed to an arbitration stipulation, entered into on the record in court, that provided for "all disputes between the community and the two individuals, who are claimants to the title of the Grand Rabbi of Bobov, be resolved by a Rabbinical court consisting of five members, two of whom will be designated by each of the sides," (id. at 4) and that the arbitration agreement governing the broader disputes among the parties "will be drafted by the three neutral members" of the arbitral panel, (id. at 6). The stipulation further provided the parties agree that this "stipulation is and will be deemed to be an enforceable arbitration agreement under all applicable provisions of law governing arbitration agreements . . . [i]ncluding Article 75 [of the New York Civil Practice Law and Rules] and Title 9 of the United States Code." (Id. at 8.) Lastly, the state court arbitration stipulation provided that the "ultimate award of arbitration may be submitted for enforcement to this Court; that is to the Supreme Court of the City of New York, County of Kings, pursuant to the provisions of Article 75." (Id. at 10.) The subsequent agreement governing the arbitration was adopted by the parties on June 29, 2005. (See D.E. # 1-Appx. A.) It was drafted by the three neutral members of the panel and consented to by all the parties, but it does not purport to vest jurisdiction in New York state courts or require application of Article 75. (Id.) The final arbitration award, however, states that "[e]ach of the parties is entitled to confirm the Rabbinical Court Ruling in secular court." (D.E. # 1-Appx. H ¶ 32.)

On August 21, 2014, the arbitration panel found, among other things, that Bobov is protected mark, that the mark is owned by petitioners, and respondents' use of the term Bobov infringed upon petitioners' mark. (D.E. #1; Wachsman Decl. ¶ 27.) Petitioners filed the instant action to confirm the arbitration award on August 15, 2015 and subsequently served 613 of the 618 respondents named in the petition. (D.E. # 72.) After withdrawing his previously filed opposition on October 8, 2015, (see D.E. # 31), Respondent Baruch Eisenberg filed a letter on March 15, 2017 requesting that the petition be denied, (D.E. # 79). Although Eisenberg conclusorily raised substantive issues regarding the award (e.g., "a totally warped ruling was rendered by the arbitrators") his opposition largely attacked this Court's subject matter jurisdiction to confirm the arbitration award because the stipulation entered into in New York Supreme Court vested jurisdiction in New York courts and provided that New York law governs the enforcement of arbitration awards.[1] (See D.E. # 79.) This Court ordered petitioners to respond to Eisenberg's opposition, (see D.E. # 80), which petitioners did by arguing that this Court has jurisdiction and that Eisenberg's non-jurisdictional arguments are barred by the applicable statute of limitations, (see D.E. # 81).

Upon review of its subject matter jurisdiction, the Court is satisfied it has jurisdiction to consider the petition to confirm the arbitral award. Eisenberg's non-jurisdictional arguments, however, are barred by the statute of limitations. As such, the Court has reviewed the petition to confirm the arbitral award and concludes it should be granted.

## STANDARD OF REVIEW

It is "well-settled that arbitration awards are 'subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding

---

[1] Eisenberg previously filed a reply in opposition on September 2, 2015. (See D.E. # 25.)

3

long and expensive litigation.'" Harper Ins. Ltd. v. Century Indem. Co., 819 F. Supp. 2d 270, 275 (S.D.N.Y. 2011) (quoting Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)). Confirmation of an arbitration award is typically a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). Only a "barely colorable justification" for the outcome reached by the arbitrators is necessary to confirm the award, and the arbitrators' rationale for an award need not be explained and can be inferred from the facts of the case. Id. (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union, 954 F.2d 794, 797 (2d Cir. 1992)).

However, before this Court can rule on the merits of whether the arbitral award should be confirmed, the Court must confirm that it has federal subject matter jurisdiction. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." (internal citation omitted)). Indeed, regardless of whether either party contests subject matter jurisdiction, "federal courts are under an independent obligation to examine their own jurisdiction." F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 101 (2d Cir. 1999) (quoting FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). "The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." Mason Tenders Dist. Council of Greater New York & Long Island v. CAC of New York, Inc., 46 F. Supp. 3d 432, 435 (S.D.N.Y. 2014) (citing Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008)).

## DISCUSSION

### I. Subject Matter Jurisdiction

Petitioners contend that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. (D.E. # 1.) Section 1338, which provides federal court jurisdiction over certain intellectual property disputes, was invoked by petitioners because the underlying subject matter of the arbitration involved a dispute regarding whether the name Bobov was protected under federal trademark laws. (Id. ¶ 8.) Section 1331 was invoked because petitioners seek to confirm the arbitration award pursuant to the FAA. Whether the Court has subject jurisdiction to confirm the arbitral award in a case that was first filed in federal court after the award had been granted is not a matter of settled law in this circuit. The Court must also determine what effect, if any, the parties stipulation entered into before the New York Supreme Court had on this Court's jurisdiction. Those issues are considered in turn below.

#### A. Basis For Subject Matter Jurisdiction

To begin with, the FAA does not confer subject matter jurisdiction on district courts. The FAA "is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." Vaden v. Discover Bank, 556 U.S. 49, 59 (2009) (internal alterations and quotation marks omitted); see also 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . ."). Thus, "[b]efore a district court may entertain a petition under the FAA, there must be an 'independent basis of jurisdiction.'" Anderson v. Hyack Hosp., No. 02 CIV. 2985 (LAK), 2002 WL 818146, at *1 (S.D.N.Y. Apr. 29, 2002) (quoting Harry Hoffman Printing, Inc. v.

5

Graphic Commc'ns, Int'l Union, Local 261, 912 F.2d 608, 611 (2d Cir. 1990)). Accordingly, petitioners cannot invoke this Court's jurisdiction solely on the basis that they seek to confirm the arbitration pursuant to the FAA.

However, in analyzing whether the Court has jurisdiction under § 1338, the Court concludes it has jurisdiction under that statute to consider whether the arbitral award should be confirmed. In the context of a motion to compel arbitration, the United States Supreme Court offered concrete guidance as to how to determine the existence of federal subject-matter jurisdiction: The court may "look through" to the underlying arbitrated claims to determine whether they arise under federal law. Vaden, 556 U.S. at 61. When "looking through" to determine whether there is federal question jurisdiction in an action involving the FAA, a court should "assume the absence of the arbitration agreement and determine whether it would have jurisdiction under title 28 without it." Id. (internal quotation omitted). Thus, the Vaden Court held that in the contexts of motions to compel arbitration, the operative question is whether the substantive conflict underlying the parties' dispute gives rise to federal question jurisdiction. Id.

The Second Circuit has subsequently expanded Vaden's look through approach beyond the motion to compel arbitration context. In Doscher v. Sea Port, 832 F.3d 372 (2d Cir. 2016), the Second Circuit held that federal subject matter jurisdiction over petitions to vacate arbitral awards under the FAA, 9 U.S.C. § 10, should also be determined by "looking through" the petition and "determining whether the district court would possess jurisdiction over the underlying dispute under the standards of § 1331." Id. at 389–90.

Although the Second Circuit has not yet resolved the specific question that this Court is now confronted with—whether the look through approach should be applied when a party is seeking to confirm an arbitration award under § 9 of the FAA—the text of § 9 and logic of Doscher

6

plainly support extending the look through approach to § 9. First, the text of §§ 9 and 10 relating to jurisdiction is substantively similar. Compare 9 U.S.C. § 9 ("If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made . . . ."), with 9 U.S.C. § 10 ("The United States district court for the district wherein an award was made that was issued pursuant to section 580 of title 5 may make an order vacating the award . . . ."); see also Doscher, 832 F.3d at 379 ("Sections 9 and 11 of the Act contain substantially identical language to § 10."). Thus, nothing on the face of § 9 precludes application of the look through approach.

Moreover, the motivation behind the Doscher court's opinion plainly compels extending the look through approach to § 9: ensuring that there is a consistent jurisdictional approach under the FAA. See 832 F.3d at 383 ("[H]ow can a federal court's jurisdiction under the same jurisdictional statute differ between § 4 and *all* other remedies under the Act?" (emphasis added)); id. at 387 (noting that excluding federal question jurisdiction here would result in a "totally artificial distinction" between cases stayed under § 3 and freestanding § 10 petitions filed in the same court (quoting Vaden, 556 U.S. at 65)). Furthermore, as the First Circuit recognized in applying the look through approach to § 9, "[a]llowing a federal court to compel arbitration in a federal question case but then later denying a federal forum for confirming, modifying, or vacating the award would lead to strange consequences." Ortiz-Espinosa v. BBVA Sec. of Puerto Rico, Inc., 852 F.3d 36, 46–47 (1st Cir. 2017). Accordingly, the Court concludes that the look through approach applies to § 9.

Applying the look through approach here, the dispute plainly invokes this Court's jurisdiction because one of the issues arbitrated involved questions of federal trademark law over which the Court has subject matter jurisdiction. Federal trademark law governs disputes over

whether a name may be protected as a trademark and disputes over whether protected trademarks have been infringed. See 28 U.S.C. § 1338 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."). After hearing arguments regarding whether respondents were violating petitioners' mark of Bobov, the arbitral panel found that petitioners are "entitled to register the name [Bobov] with the government as a Trademark." (D.E. # 1-Appx. H.) Accordingly, because the underlying dispute involved a question of trademark law, which the Court would have had jurisdiction to hear under § 1338, the Court has subject matter jurisdiction to determine whether the petition to confirm the arbitral award should be granted.

### B. Effect of the State Court Stipulation

Having concluded it has subject matter jurisdiction to hear the petition to confirm the arbitral award, the Court must now consider the effect, if any, of the stipulation to arbitrate a portion of the dispute entered in state court. Respondent Eisenberg argues that the confirmation was required to be brought in New York state court pursuant to New York law. (See D.E. # 79.) Petitioners contend that the state court stipulation was only permissive—not mandatory—as to state court jurisdiction, and in any event, a subsequent arbitration agreement between the parties, which contained no choice of law or forum selection clause, effectively nullified the prior stipulation, (see D.E. # 81). The Court finds petitioners' arguments persuasive.

The FAA permits a court to confirm an arbitral award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9. "If no court is designated in the agreement to arbitration, confirmation may be sought in federal court for the district within the award was made." Id. Here, it appears the parties entered into two arbitration agreements: one governing their dispute over real property,

8

entered in New York state court, and a subsequent agreement governing the entire dispute and crafted by the arbitral panel. The stipulation entered into state court provided that both New York law and the FAA governed while also providing that further disputes "may be submitted for enforcement" to state court. (See D.E. # 81-Appx. B at 10.) The subsequent agreement crafted by the arbitral panel does not contain a choice of law provision or forum selection clause, but the arbitral award does provide that "[e]ach of the parties is entitled to confirm the Rabbinical Court Ruling in secular court." (D.E. # 1-Appx. H ¶ 32.)

This Court is obviously a secular court and thus a forum contemplated by the arbitral panel agreement. Moreover, even if the state court arbitration agreement was controlling, it would not foreclose confirmation in this Court. It is well-settled that permissive forum selection clauses, such as the one in this case, that provide that the action "may" be submitted to state court, do not require that forum to be chosen by the parties to that agreement. See, e.g., Phillips v. Audio Active Ltd., 494 F.3d 378 (2d Cir. 2007); John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51 (2d Cir. 1994). It is also worth noting on this point that the state court arbitration agreement explicitly provided that the agreement would be governed by the FAA. Accordingly, this Court is satisfied that it is the appropriate forum to address petitioners' motion to confirm the arbitration award.

## II. Confirmation of the Arbitration Award

Eisenberg contends that the arbitration award was "warped" and that it failed to follow Jewish and secular law, (see D.E. # 79 at 3), but these arguments are far too late under the applicable statute of limitations to be considered at this stage. The FAA provides that to be timely, a challenge to an arbitration award must be brought within three months after the award is made. See 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon

the adverse party or his attorney within three months after the award is filed or delivered."). Although the text of the statute applies to motions to vacate awards, the Second Circuit has held that the same statute of limitations applies to oppositions to motions to confirm arbitral awards. Wallace v. Buttar, 378 F.3d 182,198-99 (2d Cir. 2004) ("[A] party 'may not raise a motion to vacate, modify or correct an arbitration award after the three month period has run, even when raised as a defense to a motion to confirm.'"(quoting Florasynth, 750 F.2d at 175)); see also Waveform Telemedia, Inc. v. Panorama Weather N.A., No. 06 CIV. 5270 (CMM), 2007 WL 678731, at *5 (S.D.N.Y. Mar. 2, 2007) ("There are no exceptions to [the three month statute of limitations]."). This rule has been strictly enforced to further the policy goals of the FAA because "permitting such challenges to arbitration awards to be asserted as defenses to a motion to confirm, filed after the time period for filing motions to vacate has run, contravenes federal policy favoring quick resolution of arbitrations and the enforcement of arbitration awards, 'while simultaneously frustrating Congress' intent to limit judicial review of arbitration awards.'" Dealer Comput. Servs., Inc. v. Dayton Ford Inc., No. CIV. 08CV3508 (FLW), 2009 WL 971408, at *4 (D.N.J. Apr. 9, 2009) (quoting Jeereddi A. Rasad, M.D., Inc. v. Inv. Assocs., Inc., 82 F. Supp. 2d 365, 367–68 (D.N.J. 2000)). Therefore, "[w]hen the three month limitations period has run without any vacation of the arbitration award, the successful party has a right to assume the award is valid and untainted, and to obtain its confirmation in a summary proceeding." Florasynth, 750 F.2d at 178.

In the present case, the arbitral award at issue was made on or about August 21, 2014. (D.E. # 1.) Any challenges to that award should have been raised on or before November 21, 2014. Instead, Eisenberg filed an opposition requesting that the petition to confirm the arbitration be denied on March 15, 2017—nearly three years after the statute of limitations had run. (See D.E. # 79.) Even if the Court were to consider an equitable exception to the statute of limitations given

that Eisenberg is proceeding pro se and had previously filed an opposition and withdrew it, the circumstances here would not warrant it. Eisenberg's initial opposition was filed almost a year beyond the statute of limitations, (see D.E. # 25) and his renewed challenged was filed nearly two years after he withdrew his initial opposition, (see D.E. # 79). Accordingly, because Eisenberg filed his oppositions well beyond the statute of limitations, his non-jurisdictional challenges to the arbitral award cannot be considered and petitioners are entitled to a summary review of the award.

The Second Circuit has instructed that where, as here, a petition to confirm an arbitration award is effectively unopposed, the petition should be treated as "an unopposed motion for summary judgment." D.H. Blair, 462 F.3d at 110. Thus, as when a court rules on a summary judgment motion, the court "may not grant the petition without first examining the submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Id. at 110. "Notwithstanding this inquiry, the Second Circuit has 'repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process.'" The Mason Tenders Dist. Council Welfare Fund v. DCM Grp., LLC, No. 7:13-CV-1925 (NSR), 2017 WL 384690, at *3 (S.D.N.Y. Jan. 25, 2017) (quoting Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138 (2d Cir. 2007)). Thus, "[t]o encourage and support the use of arbitration by consenting parties," the Court "uses an extremely deferential standard of review for arbitral awards." Porzig, 497 F.3d at 138.

On the record before the Court, the Court concludes that the arbitration award should be confirmed as to the 613 respondents who have been served. There is no indication that the arbitrator's award was procured through fraud or dishonest,y or that any other basis for overturning the award exists. Furthermore, the arbitrator's decision "provides more than a barely colorable justification for the outcome reached." Trustees for Mason Tenders Dist. Council Welfare Fund,

Pension Fund, Annuity Fund & Training Program Fund v. Capstone Constr. Corp., No. 11-CV-1715 (JMF), 2013 WL 1703578, at *3 (S.D.N.Y. Apr. 19, 2013) (discussing the legal standards for resolving unopposed petitions to confirm arbitration awards). Thus, based upon the submissions, petitioners have met their burden of demonstrating that there is no issue of material fact precluding confirmation as to all portions of the award with respect to the 613 respondents served.

For the foregoing reasons, petitioners' motion to confirm the arbitration award is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order as to the 613 respondents who have been served. Five respondents have not been served with the petition to confirm the arbitration award. Within 14 days of the date of this Order, petitioners are directed to show good cause for their failure timely to serve these remaining respondents. Failure to demonstrate such cause will result in dismissal of the respondents who have not been served. See Thompson v. Maldonado, 309 F.3d 107, 110 (2d Cir. 2002) ("As indicated by the plain language of Rule 4(m), notice to the plaintiff must be given prior to a sua sponte dismissal."). Alternatively, petitioners may seek voluntary dismissal of these respondents.

SO ORDERED.

Dated: September 30, 2017
Brooklyn, New York

/s/ CBA

Carol Bagley Amon
United States District Judge